Mr. Sibiora? Yes, sir. Ready to proceed? I am, Your Honor. Please do. Thank you. Good morning, Your Honors. May it please the Court. As Patentee Knauf has informed the Court twice in its reply brief, in the parallel district court proceeding involving this 670 patent, Knauf is seeking hundreds of millions of dollars in damages. Now, you've seen the design here. It's a piece of cloth of it that was taken, photographed, and then a photocopy. PTAB Board, in reviewing this, applied the wrong legal standard. We're here to ask you to reconsider, review, and reverse their determination based on the claim construction they applied both the second time and the third time because they had three different claim constructions. Is there any SAS issue in the 2017 IPR? They only instituted on seven of the nine proposed grounds. We hadn't briefed that issue. I mean, there's obviously, retrospectively, there would be an issue, yes, but it hadn't been at the time the decision wasn't around, so. But you haven't asked us since that decision to send it back to the Board for review on the grounds not instituted. We have not formally asked that, no. Why not? I mean, that decision's been out for at least a month, if not longer. We've had multiple requests from parties in other cases. Do you not want it sent back? Well, we believe on the record that it exists now there was sufficient information for the Court to reverse based on the claim construction we already had because there were seven grounds considered. And based on this record, rather than go back and do this again, we feel that the record is sufficiently ample for this Court to rule on this record on the grounds that were found. As we sit today, you're not asking us to send it back on an SAS ground? No, we have not done that, Your Honor. But you are not. We want to be clear with you. If the Court is amenable to such an act, the request, we would make such a request, but we have not made one at this point. On page 22 of the blue brief, you make an argument that certain prior art anticipates, quote, where no verbal claim construction is needed. But in the very next paragraph, you state that a detailed verbal construction is needed. It seems like you're not contesting the PTAB's decision to verbally construe the claims. We are saying that that is the appropriate way to go, but we're not sure where you're going to end up on this one. Either way, either no verbal construction or the verbal construction that was initially found, where it says such as browning cream, either of those constructions would be appropriate. We made both arguments in the second petition with respect to both grounds. Petition number two, grounds one and two, and grounds three and four, we argued in the first instance for the initial construction with respect to what the Court had, what the Board had said. And then with the grounds three and four, we said no construction at all is necessary. Just use visual inspection, basically. So we made the arguments, and we want to preserve those arguments, because we think if you do look just at the construction, if you don't have a verbal construction, if you determine it's not necessary, there is sufficient evidence on this record, Professor Blyde's testimony and the decision, in addition to the observation that one can make as an ordinary observer or as an ordinary designer, that the browning cream is present and all the other elements are present. So that on this record, whether you use no verbal construction or that first verbal construction or even the second verbal construction, which is including browning cream, under any of those constructions, the evidence is in the record to support a finding of anticipation and or obviousness. What supports a finding of those if we put this brown and cream swirl as part of the claim construction? In other words, their patent is limited not just to this swirl, but only swirls of this particular brown or cream, which is what I read the Board is concluding. Is there anything that anticipates that? I didn't see anything in the record that looked like this. I saw things that under the legal standard, we would say that the JAM 1997, except 1004, and JAM 2000 both have the same type of swirl pattern. Not the color? Well, the Board found on the fact finding that brown and cream were present. They said the color was there. Where? They said it in the initial, the final written decision. No, I don't want to see the picture. These design patents are mostly about the pictures. Right. So where's a picture that has prior art that shows a brown and cream swirl? If you look at our brief, the appellant's brief, it's page 27. So the patent is on the left, right? The patent is on the left. That's the JAM 97 on the right, I believe. They were deemed to be virtually interchangeable, the 97. So if you look at the bottom right, for example, look at the right swirl going on the lowest piece of insulation there. You can see the swirl. There are findings in this record that in fact, if you look at... What did the Board do with this reference that you're pointing us to? Did they say there's no swirl? What the Board did was it took that language, a swirl, and it added other elements, which is one of our due process elements in the final written decision. They added to that swirl pattern, they added additional aspects to it. They said, the claim design is embodied not in color alone, but in the interplay and contrasting nature of the distinct colors. Is that why they didn't find this picture to the right anticipating? Yes. I mean, if that's the case, let's assume we don't disagree with that claim construction, it doesn't anticipate, does it? We would assume that it does. What gets me about this? What's being asserted in the district court? What products are being infringed? Because if we give the Board's claim construction or if we affirm it, it's a very narrow claim construction. It is this particular swirl pattern with this particular constellation of brown and creams. Yes. I mean, I don't see any how... I mean, unless you've exactly copied this, I don't see how anything else infringes because they've stuck themselves with a very narrow claim construction to get this patent held valid. And is it really going to matter for infringement? I completely agree with that, Your Honor. It's an extremely narrow claim construction, and that would be the outcome. But when you look at... The question is, how do you apply that to millions and millions of pounds of insulation? Can you find some subsection? We think it's an impossible task, but it's going to take a year or two to go through that process, which is why we filed these IPRs, because that construction, it's supposed to be the broadest reasonable construction here. It's a different standard in the district court. The broadest reasonable construction here is not to add these additional limitations. In the file wrapper, in the prosecution, and between the parties, there was no dispute that insulation material, cloud-like appearance, et cetera, the variation of swirl pattern, these general terms were appropriate descriptions and part of a claim construction. And then in the final written decision, after we had briefed everything and argued everything in both IPRs under that type of analysis... I don't understand it. Broadest reasonable construction in these design patents seems to be something different than in the utility patents, because even if we throw out their claim construction, if we have this picture, which is sometimes we don't have a claim construction at all, that picture of their patent doesn't look like what you have on the right. So I don't see what... Even without a claim construction, the stuff on the right would anticipate. Unless you get a claim construction that says what matters is only the brown and cream and not the swirl, or the swirl doesn't have to be this specific pattern. It just has to be a swirl. If we're looking at design patents and saying one looks like the other or doesn't, those two things don't look like each other. Well, with respect to that design on 27, or I think you might be looking at the reply brief on three, which is the darker brown, we would submit that the proper construction should be a similar comparison with the darker version of it on the reply. Either way, a verbal construction would be appropriate here for the reasons stated. Just not the verbal construction the board gave. Well, the verbal construction up to the point of the last round with the board changed this position and gave us a different one. At a minimum, there ought to be a remand for us... They gave a more accurate description. Well, accurate is not fair. I mean, it's supposed to be the broadest reasonable construction. Adding additional elements, like saying distinct contrasts or aggregation of brown and cream relatively, these were not issues that were argued initially. What element was added in the final claim construction? I'd say at least two. It included brown and cream rather than such as brown and cream. That was the second construction. In the third construction, which was the final written decision, if you look at the record on page appendix 1002, what they said was, we do not see the same distinct contrast between the colors and hues as the proper claim construction requires. Now they're talking about, for the variation of swirl patterns, they're saying it has to have a distinct contrast between colors and hues. That was number one. Then later, they talk about relative area and the aggregate of brown and color in the claimed area appears roughly equal. They're looking to compare aggregates. The ordinary observer, who's familiar with the prior art, would not dig down to that level of detail to say, oh, I need to see how much the aggregate of brown versus cream is. Their own experts have said that brown is not a color that people spend a lot of time looking at. This is ordinary building insulation. It's a commodity. The level of detail that was added in the final written decision that we did not have a chance to address previous to that changed the nature of the analysis. That was the basis for the decision. I don't understand why it would help you if we send it back because your picture still doesn't look like their picture. I know this sounds stupid, but this is what design patents are. They've added more detail to the claim construction. If we think that claim construction is the correct one and we send it back because you didn't have the opportunity to respond to it, they're just going to hold up this picture and say they don't look like each other. We would submit under the proper construction, you read the file record where the distinction was made between variation of distinction. Let's just assume we agree that the last claim construction that you're quibbling with is correct. Is there any reason to send it back for an anticipation analysis? None of the references you pointed me to anticipate under that third claim construction, do they? We certainly can make an argument they do. We did have an opportunity to address that. The board itself... The one you're showing me on page 27. Your view is that I think the ordinary observer looking at it in the context of the prior art, where you know that all... I know we're pretty ordinary. Well, I would say you're not boring. I look like I'm into my time. I would say this, Your Honor. The issue is this. The perspective of the ordinary observer does not go to that level of detail. They would look at it to say, is it brown and white, brown and cream insulation? Does it have a swirl pattern? That's asking us to overturn the claim construction. If we're not overturning the claim construction, which is what I asked you, if we agree that the board's more detailed claim construction, which you call the third one, is correct, or at least not reversible, then what anticipates in this record? The JM references. We would submit we put in testimony for an expert to support that. I have to agree with Judge Hughes that, in any case, it appears to me that the board has written your opponent out of district court as far as any actual claim they make of infringement. I mean, are they asserting it against the picture on the right of your product? Because if they are, you certainly don't infringe. I mean, you can't infringe if you don't anticipate, can you? No, we would agree with that, Your Honor, but it's leaving it to the district court and a court proceeding and a jury to sort this out, whereas in this context, the claim construction is simply wrong. Well, you'll have this transcript. Beg your pardon? You'll have this transcript. We will have this transcript. I'd like to reserve a little bit of time. Thank you, Your Honor. Do you agree there's no SAS issue to be raised? Yes, Your Honor, we agree, particularly that the appellants have not raised or asked this court to address any SAS issue, and therefore, it does not need to be addressed. Are you asserting this patent against the product on the right of page 27 of the blue brief? No, Your Honor, we are not. To Knauf's knowledge, that's not a product we're aware of having ever been sold by the appellant in this case. Are you asserting it against products that we are aware of? No, Your Honor, we are not. How many products are brown and cream with this particular swirl from your competitors? Quite a few products nowadays, Your Honor. After Knauf came out with this design, it was pretty widely adopted by several competitors, including JM. To introduce myself, may I? Well, if it was adopted, then why didn't they give us that as ... I mean, why isn't that in the record? I mean ... I'm sorry, I'm not trying to ... Is that not in the record about them that particular pattern? I guess it post-states yours that they don't want to show that they're infringing. That's correct, Your Honor. And there is, in the record, if Your Honor would like to view it at the appendix at 4182, is the complaint in the district court. And I believe that as part of the appendix as well, it had several exhibits to it that show some of the infringing products in this case. The complaint starts at appendix 4182 and goes on for several pages and then has some appendices at the end of it. Your Honor, if I ... Keep going while we ... Yes, thank you, Your Honor. What Knauf would like to point out to the court today, Your Honor, is that the primary issue in this case that we think really infects all of the issues ... Anyway, counsel, tell us where it is. There's an awful lot of exhibits. I was going to say, there's a patent right after 4182. Yeah, and they appear to be in black and white, so I don't know what good that's going to do. Yes, Your Honor, it does appear that the exhibits here in the appendix were printed in black and white, so the comparison may be not very probative at this time. What I might point Your Honor to, is appendix 4246 as an example of one of the infringing products you can see. It has a swirl. We don't know if it's brown and cream. Correct, Your Honor. I will represent to the court it is brown and cream. If it's green and cream, it doesn't infringe, right? We would agree, Your Honor. Yes. It has to be, and it can't be ... I mean, you've confined it to this picture with some pretty narrowing claim construction at the board, so it has to be pretty close to this brown and cream, doesn't it? It can't be brown and white. Yes, Your Honor, and that actually leads very well into the point I was getting ready to make. Well, I just want to add that looking at these things, none of them look like the cloud-like swirls. Even in black and white, I don't see anything that looks like the cloud-like swirls described by the board. They're more uniform. Well, Your Honor, I do believe that comparison's hard to make without the benefit of the color shown in those exhibits, but ultimately ... No problem, Your Honor. Ultimately, Your Honor, that is a fact question. It's one that the board decided in our favor in terms of the validity issue here about several issues of anticipation were addressed during my opponent's argument. Those are factual questions that the board answered here in Knopf's favor, and ultimately, those will be factual questions that a jury and the district court will need to answer about whether or not on the infringement side that JM's products are substantially the under the infringement standard as ... Sure, but you've nailed yourself down to a very narrow claim construction, so uniform swirls aren't going to cut it because there are uniform swirls in the prior art. This is un-uniform. Yes, Your Honor. Knopf accepts that the claim, as is black-letter design patent law, the claim is the photograph itself. We've advocated that throughout the proceeding. That's what the board adopted, and we agree with that. The board felt it helpful to verbalize that verbalization that the board ultimately came up with. If we're analyzing what the elements of that claim design are, it's complicated to describe as the board recognized, and we think that at a minimum, the board's explanation of that are the appropriate elements in a verbalization of that claim. Your Honor, it's what JM ... Do you have any design patent case law in which color photographs are used to narrow construction to adjust the colors depicted? Your Honor, I can't think of a case offhand that had a color photograph, but I think it's very common in the design law that the claim is always limited to the drawing itself. I mean, prime example ... That wasn't my question. Yes, Your Honor. So you don't have anything? I don't have a specific example with a color photograph, no, Your Honor. So if we had a different colored swirl picture that's a prior art that's pretty close to this, but it just wasn't brown or cream, why wouldn't it just be obvious to use different colors? Yes, Your Honor. So the board did not find that reference to be present anywhere, but to answer your hypothetical, that's something that Knopf did address with its evidence. None of the grounds were found to meet that, but we presented evidence before the board about why that would have been unobvious, about why there would have been no motivation. First of all, we presented expert testimony regarding why brown was not seen as a desirable color at the time of the invention here. It has since become much more popular with the ecological movement. Brown and green are now seen as positive colors, whereas at the time they weren't. That's one reason, and as well as just the art teaching away from that with the fact that in the prior art, most companies dyed their insulation to be bright colors. Very common knowledge would be Owens their insulation pink. That was kind of the standard in the art, and so using this natural brown swirled pattern was contrary to that wisdom. Ultimately, Your Honors, what we believe JM is seeking to do, what they sought to do in the IPR in here is to ask the board, and now this court, to go with a verbal claim construction that gets away from the photo. They want to go with a very basic list of elements that's very broad and that asks the board, and now the court, to ignore the photograph and then just look at this sterile list of elements. That's inappropriate in this context, particularly with the complex photograph that we have here. That's why the board's verbalization was appropriate to reference the colors in the photograph and use that as the court explained an Egyptian goddess. Ultimately, the photograph is always the touchstone of what the claim is, even if that claim is verbalized. The board appropriately applied that verbalization in this case. Going with JM's approach of taking the color out of the claim and particularly getting away from the colored photograph can result in absurd things. Some of the grounds that they put forward in terms of the pink insulation supposedly anticipating, when asked about that, their expert agreed that the claim construction he advanced and JM advanced would have covered a piece of insulation that was green with red polka dots. Although he then admitted after that, that was something he wouldn't have cared to have any of his peers review in a journal article. Well, that wouldn't meet the swirling and cloud light limitations either. Well, that's correct, Your Honor, because in JM's view, again, they want to get away from the photograph, what's shown. When they list the claim elements of cloud-like appearance and swirl pattern, Knopf's view is those are the swirls shown in the photograph. In JM's view, they say, once you enunciate those, all insulation meets that based on the prosecution history, a statement that the examiner made in the prosecution history that certain prior art references had that. In their expert's view and in JM's view, once you have insulation material, you automatically have everything except the specific colors, but that's not what Knopf argued and that's not what Knopf argued against that and the board found against that, that those are specific elements that you have to tie to the photograph and you have to look at the prior art references individually to see if they're present and the board distinguished. Do you agree that for infringement purposes, you're going to have to show all of the specific elements that you propose as part of the claim construction here too? Yes, correct, Your Honor. Are you going to go into district court now and say, oh, you don't need to claim construction, let's just put up the pictures and say they're the same? No, Your Honor. I think that the, again- You have an expert argue, well, they have swirls, they may not be cloud-like, but they're still swirls. Knopf's view is that the photograph is the ultimate touchstone of what the claim is, but that the board- That's what worries me because I don't want you to try to argue two different things. If you bound yourself to these specific claim constructions in order to avoid an invalidity finding, then you shouldn't be able to go into district court and say, we don't need verbal claim construction anymore, just show up pictured in the photograph. You agree that JM and anyone else is going to be able to say that you bound yourself to that position in the court of appeals, am I not correct? Yes, Your Honor. This is the claim construction, this verbalization of the claim is, in our view, an appropriate way to describe what's shown in that picture. It's consonant- And you are bound by it. We are bound by it, particularly when this court affirms the board's decision that that's the appropriate claim construction. Your Honors, I'd like to move over for a moment to our cross-appeal regarding the estoppel issue in the second IPR. This is particular, as the court can see from the timeline we presented at page 11 of our opening brief, there's two IPRs that happened here. This has come up in many of these issues. In the second IPR, JM advanced several grounds that were based on some of the same references from the first IPR, plus two references it alleged were new or it had recently found. But those two references were JM's own brochures, the brown brochure that you were looking at earlier, Your Honor. If we affirm the board, do you care about the estoppel issue? No, Your Honor. If this court affirms on the merits, then we would agree that the estoppel issue is a moot point. But if the board does reach the estoppel issue, I'd just like to make one or two points. And that's that the error we believe from the board here was ignoring standard agency law, that JM did in fact possess and have knowledge of these brochures all along. It agrees that they were in the possession of its employee. And that employee had those possessions, particularly this is Mr. Moda, acting within the scope of his employment. He testified that he saved them so he could discuss them with customers and he was expected to do so by those at JM. This is on his testimony on cross-examination at Appendix 3966. The board, however, ignored and refused to apply standard agency law in this case to find that JM had knowledge of those due to the knowledge of its agent, Mr. Moda. And we believe that was legal under interpreting the statute. The statute just says, 315 says, what could JM reasonably have raised in this proceeding? But the board instead myopically just focused on what could a hypothetical third party searcher have found? Well, that's not the case here. This isn't a case where JM had to go off and find these references. They were in JM's possession and their employee had them and knew about them. But there were lots of employees and lots of documents and this particular individual was working in a different division. Is that right? We would actually disagree with that, Your Honor. And that's something we pointed out. This whole division- It's a compound question with what do you disagree? I'm sorry. I focused on the last part of the question about different divisions. Mr. Moda worked in the OEM division, as my understanding, and that is there were products involved in the lawsuit in that division. But the key point, though, is what Mr. Moda's job was and his job responsibilities relative to these brochures. You're in your reserved time, just so. Okay. Thank you, Your Honor. Is there another part of your question, Judge? No. Go ahead and answer. I'm not sure if there's a part I hadn't answered yet. Well, again, the question was why you're, in effect, imputing knowledge of every employee to the parties that put together the IPR. And I'm not sure that's an accurate or legally proper standard. I see, Your Honor. Thank you for the clarification. I would agree that that's not an appropriate standard, but that's not what we're asking for here. We're not asking for the knowledge of every acting within their authority and the scope of their employment. The things that they know about as because of their job responsibilities, those are imputed under just normal agency law that applies across the board, patent law and otherwise, to corporations. And that, in this case, those requirements are met for Mr. Moda with regard to these brochures. And so JM had knowledge of them at the time and should be stopped. With that, Your Honor, I'll save the remainder of my time. Thank you. I'd like to, if I could, turn to the 103 issue, which, Judge Hughes, you raised. Even if you disagree with our position on 102 with respect to the overall appearance, this board already found, under 103, in the final written decision in the first IPR, that the soundproofing reference, which is 1008 in the second IPR and 1007 in the first IPR, possessed the attributes of a variation of a swirl pattern and a cloud-like appearance. At Appendix 40, the board found, in a final written decision using its claim construction, that the soundproofing installation material appears, like the claim design, to reasonably have a cloud-like appearance. Wait, where's the picture for that? The picture would... I thought you said 1008, but I don't have a 1008. The picture for soundproofing would be in our opening brief at 51 to 52. And there were three photographs for soundproofing that were all called together collectively soundproofing that appear there. They were submitted in the initial IPR. They were found to be a Rosen reference. Let me just clarify. The ones on the left, are those the patents? Patents, yes. 670 is Jackson. That's the patent. And the ones where you see the pinkish color and the man there with the drill, that's the soundproofing reference. These are reduced size. But they're not brown. The point is, as a Rosen reference, to combine with the Johns Manville 1997 and 2000, the issue that the... Which is the ones we were talking about on your opening, on page 27? Correct. The missing element found in the first written decision, with respect to this issue, was there was no brown and cream. You haven't shown us brown and cream. And so in the second IPR, we put in this reference. It ended up being a different exhibit number, 1008. And we said this reference, in connection with the JM brochures, gives you the variation swirl pattern and the cloud-like appearance, which you found in soundproofing already as a primary, as a Rosen reference. You already made those findings. And now you have brown and cream. We would submit that at least there should be remand, or there really should be reversal based on that. They've already made the findings in this record, that they have a design that has variation in the swirl pattern, it's insulation material, and it's got a cloud-like appearance. And they've made the finding as well, that brown and cream is present in the JM 2000. Wrap it up, counsel. You're out of time. Thank you, Your Honor. Let me be yourself here across the field, counsel. Yes, Your Honor. Your Honor, if I may, I'd just like to briefly make an objection to my opposing counsel's argument there on rebuttal. You may not. Thank you, Your Honor. With regard to the- You didn't mention you're across the field. That's true. He did not, Your Honor. So there's nothing to respond to. May I just say, Your Honor, that if the court will entertain for just a moment, that the estoppel applies under 315 to both grounds that were raised or reasonably could have raised, grounds that weren't actually raised, including any of these combinations, like my opposing counsel just came up here and advanced in his rebuttal that were not raised below. And the estoppel, though, however, applies to those just as well as it does the grounds that they raised. Thank you, counsel. Thank you, Your Honor. Matter will stand submitted. Thank you.